UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORETTA POYNEER,

                Plaintiff,

v.                                                                        5:22-CV-0261
                                                                          (GTS/ML)
NEW YORK STATE UNITED TEACHERS;
SYRACUSE TEACHERS ASSOCIATION,
INC.; and SYRACUSE CITY SCHOOL DISTRICT,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| THE FAIRNESS CENTER | DAVID R. DOREY, ESQ. |
|   Counsel for Plaintiff | LOGAN HETHERINGTON, ESQ. |
| 500 North Third Street | NATHAN J. MCGRATH, ESQ. |
| Harrisburg, PA 17101 | TESSA E. SHURR, ESQ. |
| | |
| NEW YORK STATE UNITED TEACHERS | ANDREA A. WANNER, ESQ. |
|   Counsel for Union Defendants | CLAYTON EICHELBERGER, ESQ. |
| 800 Troy-Schenectady Road | ROBERT T. REILLY JR., ESQ. |
| Latham, NY 12110-2455 | |
| | |
| ALTSHULER BERZON LLP | SCOTT A. KRONLAND, ESQ. |
|   Co-Counsel for Union Defendants | |
| 177 Post Street, Suite 300 | |
| San Francisco, CA 94108 | |
| | |
| FERRARA FIORENZA P.C. | NICOLE M. MARLOW-JONES, ESQ. |
|   Counsel for Syracuse City School District | MILES G. LAWLOR, ESQ. |
| 5010 Campuswood Drive | |
| East Syracuse, NY 13057 | |

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

     Currently before the Court, in this civil rights action filed by Loretta Poyneer ("Plaintiff")

against New York State United Teachers ("NYSUT"), Syracuse Teachers Association ("STA")

(together, the "Union Defendants"), and Syracuse City School District ("SCSD") (collectively "Defendants"), is the Union Defendants' motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Dkt. No. 47.)  Defendant SCSD joined the Union Defendants' motion by a declaration filed on July 6, 2023.  (Dkt. No. 54.)  For the reasons set forth below, the Union Defendants' motion is granted, and Plaintiff's Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

Generally, in her Complaint, Plaintiff asserts two claims.  (Dkt. No. 1.)  First, Plaintiff claims that Defendants violated her First Amendment rights of association, free speech, and free choice (as incorporated against the states through the Fourteenth Amendment) by continuing to deduct moneys from her wages to pay dues to the Union Defendants even after she resigned from membership in those unions without procuring from her a valid waiver of her constitutional rights.  (*Id.* at ¶¶ 51-66.)   As part of this claim, Plaintiff alleges that N.Y. Civ. Serv. L. §§ 201 and 208 (the "Taylor Law") are unconstitutional, either facially or as applied, because they require public employees to maintain an unwilling allegiance to and financial support of employee organizations of which they are not members.  (*Id.*)

Second, Plaintiff claims that Defendants violated her right to due process under the Fourteenth Amendment by failing to provide Plaintiff with notice or a meaningful opportunity to object to the continued deduction of her wages as dues to the Union Defendants.  (*Id.* at ¶¶ 67-75.)

### B.     Parties' Briefing on the Union Defendants' Motion to Dismiss

2

### 1.     Union Defendants' Memorandum of Law

Generally, in their memorandum of law, the Union Defendants make five arguments. (Dkt. No. 47, Attach. 1.)  First, the Union Defendants argue that Plaintiff's claims for declaratory and injunctive relief should be dismissed for lack of subject-matter jurisdiction because, given that evidence proves the wage deductions ceased in June 2022 pursuant to the terms of the membership agreement and that she will not have any further deductions made unless she voluntarily rejoins the union, there is no live case or controversy remaining as to those remedies. (*Id.* at 11-13.)

Second, the Union Defendants argue that, apart from the merits, the claims against the Union Defendants should be dismissed because their conduct does not qualify as a state action. (*Id.* at 13-15.)  More specifically, the Union Defendants argue that they are not state actors and the alleged failure to secure a proper authorization for the dues deductions taken from Plaintiff's wages is based on a private contract between the parties and not on any state statute or policy. (*Id.*)

Third, the Union Defendants argue that the claims against Defendant SCSD should also be dismissed because Defendant SCSD was required to comply with the Taylor Law, which requires it to deduct dues from employees who have signed an authorization agreement until such time as that authorization is properly revoked in accordance with the terms of the agreement, and it is well established that a local government entity cannot be held liable under Section 1983 for complying with the mandate of state law.  (*Id.* at 15.)

Fourth, the Union Defendants argue that the deductions made from Plaintiff's wages based on her voluntary membership agreement do not violate the First Amendment.  (*Id.* at 15-

23.)  More specifically, the Union Defendants argue that (a) Plaintiff's signing of the membership agreement and dues authorization was voluntary because she alleges she signed it out of a desire to keep the benefits of union membership, and the membership agreement itself affirms that signing is not a condition of employment, (b) the Supreme Court's decision in *Janus v. Am. Fed. Of State, Cnty., and Mun. Emps., Council 31*, 585 U.S. --, 138 S.Ct. 2448 (2018), does not change the obligation to be bound to the terms of a voluntarily signed agreement, nor does it invalidate such agreements that were signed before that case was decided, and (c) *Janus* does not stand for the proposition that the Union Defendants were required to obtain any special waiver of Plaintiff's First Amendment rights beyond the voluntarily signed agreement itself. (*Id.*)

Fifth, the Union Defendants argue that Plaintiff has not been denied any due process rights by continuing to have union dues deducted from her wages according to the terms of the membership agreement even after she chose to leave the union because (a) she voluntarily agreed to the terms of that agreement, and the requirement to continue to pay dues until she provided an adequate revocation, whether or not she remained a member, was clear on the face of the agreement, (b) she was not denied notice and opportunity to be heard because she knew what the membership agreement contained before deciding to sign it, (c) Plaintiff is not entitled to certain procedures outlined in pre-*Janus* authority because she was a union member and she had no right to become a union member without also assuming the full obligations of that membership (i.e., she had no right to require that her dues go only to the funding of certain activities but not others), and (d) even if there was some sort of error, the state provides adequate post-deprivation remedies.

4

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff makes seven arguments. (Dkt. No. 53.)  First, Plaintiff argues that, as a procedural matter, because the Union Defendants have submitted extrinsic evidence with their motion and used such evidence to support their arguments, their motion should be converted to one for summary judgment and a decision deferred to allow Plaintiff to conduct proper discovery on the relevant issues.  (*Id.* at 8, 14.)

Second, Plaintiff argues that, regardless of the membership agreement, Defendants were required to obtain from her a valid constitutional waiver before continuing to deduct dues from her wages after she revoked her union membership, and failed to do so here.  (*Id.* at 15-18.) More specifically, Plaintiff argues that not only is waiver of constitutional rights a federal matter that is superior to state contract law, but Plaintiff's signing of the membership agreement (which does not contain a clear waiver of First Amendment rights) cannot be considered to be a waiver of her constitutional rights because that agreement was signed before *Janus* made any such right apparent under the First Amendment.  (*Id.*)

Third, Plaintiff argues that her signing of the membership agreement and dues authorization was coerced and not voluntary and therefore cannot constitute a valid waiver of any rights or an enforceable agreement.  (*Id.* at 18-19.)

Fourth, Plaintiff argues that the membership agreement is not enforceable even under state law contract principles because (a) there was a lack of consideration to support the agreement given that Plaintiff was already a member of the union at the time she signed the agreement and therefore did not gain anything she had not already previously been given, (b) the Union Defendants effectively waived the dues deduction provision in the membership agreement

5

when they accepted her resignation from the union, (c) the agreement itself is ambiguous and lacks a clear indication about the timing of the applicable waiver period, and (d) the Union Defendants materially breached the contract by withholding the benefits of union membership after her resignation while nevertheless continuing to deduct dues from her wages.  (*Id.* at 19-24.)

Fifth, Plaintiff argues that she has stated a claim for a violation of her due process rights because she has plausibly alleged that the Union Defendants violated her First Amendment rights and held her to an ambiguous agreement, and that they provided no process for her to object to dues being deducted, the ways those dues were used, or the enforceability of the agreement.  (*Id.* at 24-27.)

Sixth, Plaintiff argues that the Union Defendants are state actors in that they acted in concert with Defendant SCSD (a state entity), and because the ability of unions to deduct dues from employees' wages is a state law-enforced bargained-for right.  (*Id.* at 27-30.)  Plaintiff further argues that Defendant SCSD's actions in continuing to take deductions from Plaintiff's wages after she became a nonmember of the union violated New York law and thus constituted a "policy" under *Monell* that is distinct from mere compliance with applicable law.  (*Id.*)

Seventh, Plaintiff argues that the pleadings make a plausible showing that she was coerced into signing the membership agreement, specifically because requiring her to complete two written forms to resign her union membership rather than accepting her oral resignation was "classic compelled speech," and that she intends to move before the Court to assert an additional First Amendment claim for violating her rights to freedom of speech and association in this respect.  (*Id.* at 31.)

### 3.      Defendant SCSD's Response Letter

In a declaration, Defendant SCSD stated that it joins in the motion of the Union

Defendants, given that the Union Defendants' arguments show that the claims asserted against

Defendant SCSD are legally insufficient and non-meritorious.  (Dkt. No. 54.)

### 4.      Union Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, the Union Defendants

make five arguments.  (Dkt. No. 55.)  First, the Union Defendants argue that, as to the portion of

their motion brought pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiff has not opposed the dismissal

of her requests for declaratory and injunctive relief, and that consideration of the extrinsic

evidence related to this issue does not require conversion of the motion to one for summary

judgment because (a) consideration of such evidence is proper on motion considering issues of

subject-matter jurisdiction, and (b) Plaintiff does not need discovery to determine that her own

payroll deductions have ended.  (*Id.* at 5.)

Second, the Union Defendants argue that their conduct cannot be considered to be a state

action, and Defendant SCSD's ministerial role in processing payment deductions for the Union

Defendants pursuant to the membership agreement does not make them state actors.  (*Id.* at 5-8.)

Third, the Union Defendants argue that the claims against Defendant SCSD should be

dismissed because it merely complied with state law as it was required to do.  (*Id.* at 9.)

Fourth, the Union Defendants argue that Plaintiff's allegations do not plausibly allege a

violation of her First Amendment rights for the following reasons: (a) the voluntarily signed

membership agreement was a sufficient waiver of her First Amendment rights in this respect; (b)

the agreement was not the product of any duress or coercion because Plaintiff herself alleges that

she signed it in order to continue receiving union benefits and there is nothing threatening or coercive about merely informing Plaintiff she would lose those union benefits if she failed to comply with the requirements of remaining a member of the union; (c) the agreement does not lack consideration because there is no question that Plaintiff would have lost the union benefits had she declined to sign the membership agreement, and it was the desire to retain those benefits that induced her to sign the agreement; (d) the agreement clearly allows for the union to continue to deduct dues for the period specified, whether she remained a member for that whole period or not; (e) the language in the membership agreement regarding the revocation window is not ambiguous because it clearly states the period is either August 1 through August 31, or a period specified in the collective bargaining agreement, and there is no alternative period specified in the collective bargaining agreement; and (f) the Union Defendants did not breach the agreement by ceasing to provide union benefits after she withdrew from membership because Plaintiff herself should not have had any expectation to continue to receive benefits after expressing her wish to withdraw from the union.  (*Id.* at 10-11.)

Fifth, the Union Defendants argue that Plaintiff's allegations do not plausibly allege a violation of her Fourteenth Amendment due process rights because (a) she was not deprived of any protected interest given that she voluntarily authorized the dues deductions, and (b) New York State provides processes, such as the Public Employment Relations Board, that could have addressed her concerns, processes of which Plaintiff did not avail herself.  (*Id.* at 12.)

**5.      Supplemental Briefing**

The Union Defendants also submitted a supplemental letter-brief regarding the Second Circuit's decision in *Wheatley v. New York State Teachers*, 80 F.4th 386 (2d Cir. 2023), which

had been issued after the completion of the parties' briefing in this action.  (Dkt. No. 57.)  The Union Defendants argue that the circumstances and issues decided in that case are materially indistinguishable from those at issue in the current case, and thus the Second Circuit's finding supports their motion to dismiss Plaintiff's Complaint.  (*Id.*)

Plaintiff argues in response that *Wheatley* is distinguishable because that case did not involve any allegations that the relevant membership agreement was signed under coercion or duress or that a valid contractual relationship was lacking, whereas Plaintiff has made such allegations here.  (Dkt. No. 59.)  Plaintiff further argues that, in any event, the Court should wait to render any decision in this case until the Second Circuit rules on a petition for rehearing of the relevant decision in *Wheatley*.  (*Id.*)

## II.     GOVERNING LEGAL STANDARDS

### A.     Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp.*

9

*Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

      **B.**     **Motion to Dismiss for Failure to State  Claim**

      It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

      Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

      On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

10

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

III.    **ANALYSIS**

12

A. **Whether Plaintiff's Claims Premised on a Request for Injunctive and Declaratory Relief Should Be Dismissed for Lack of Subject-Matter Jurisdiction**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in the Union Defendants' memoranda of law.  *See* Part I.B.1 and 3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

The Court specifically finds that these requests for declaratory and injunctive relief should be dismissed as moot based upon the same rationale discussed by Senior U.S. District Judge Frederick J. Scullin, Jr., in *Wheatley v. New York State United Teachers*, 629 F. Supp. 3d 18, 23-25 (N.D.N.Y. 2022), *aff'd,* 80 F.4th 386 (2d Cir. 2023).  That case involved an essentially identical request for declaratory and injunctive relief in a materially similar factual situation where it was undisputed that the defendants had stopped deducting union dues from the plaintiff's wages once she properly submitted the required written revocation notice during the period specified in the union agreement to do so; this Court dismissed such requests for relief based on a lack of subject-matter jurisdiction because the defendants were no longer deducting dues from her wages and therefore there was no harm for injunctive or declaratory relief to remedy.  *Wheatley*, 629 F. Supp. 3d at 23-25.

So too in this case.  Although Plaintiff's Complaint in this action alleges that Defendants continue to deduct union dues from her wages, the Court notes that the Complaint was filed on March 15, 2022.  (Dkt. No. 1.)  As evidence submitted by the Union Defendants with their motion shows, the Vice President of Defendant STA sent a letter to Defendant SCSD on July 22, 2022, instructing the district to stop withdrawing dues from Plaintiff's wages, and a confirmation email indicated that deductions for Plaintiff had been cancelled as of July 22, 2022, and no dues

13

would be deducted for her from that day forward.  (Dkt. No. 47, Attach. 3, at 60-62.)  Plaintiff

does not appear to dispute this fact, but instead argues that the consideration of extrinsic

evidence would require conversion of the Union Defendants' motion to one for summary

judgment.  However, it is well-established that a district court is permitted to consider evidence

outside of the pleadings when resolving a motion pursuant to Fed. R. Civ. P. 12(b)(1); indeed,

the Second Circuit has suggested that "it would be error for the district court to disregard . . .

extrinsic evidence" where such evidence "contradicts the material allegations of the complaint."

*See Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441-42 (2d Cir. 2022).  Because the Court is

permitted, or perhaps even required to consider the submitted evidence when determining

whether Plaintiff's requests for injunctive and declaratory relief are moot, it is not necessary to

convert the motion to one for summary judgment for this limited purpose.  Further, the evidence

submitted shows that Defendants stopped deducting dues from Plaintiff's wages as of July 22,

2022, and there is nothing to indicate it could begin to do so again without Plaintiff taking the

action to re-join the union.

For these reasons, the Court finds that Plaintiff's requests for injunctive and declaratory

relief must be dismissed for lack of subject-matter jurisdiction.

**B.     Whether Plaintiff's Substantive Claims Must be Dismissed for Failure to
         State a Claim Upon Which Relief Can Be Granted**

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in the Union Defendants' memoranda of law.  *See, supra,* Part I.B.1 and 3 of this

Decision and Order.  To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds that, contrary to Plaintiff's attempts to distinguish it,

the Second Circuit's recent decision in *Wheatley v. New York State Teachers*, 80 F.4th 386 (2d

14

Cir. 2023), controls much of the outcome in this case.  In a letter-notice related to the issuance of

that decision, Plaintiff requested that the Court wait to render a decision in this case until the

Second Circuit considered a petition for panel rehearing or *en banc* rehearing.  (Dkt. No. 59.)

The Court has confirmed that the Second Circuit denied that petition for rehearing on October

20, 2023.  (*See* 2d Cir. Case No. 22-2743, Dkt. No. 122.)   The Second Circuit's decision of

September 5, 2023, is therefore direct binding authority that this Court must consider when

resolving the issues in this case.

### 1.      Plaintiff's First Amendment Claim

In *Wheatley*, the Second Circuit explicitly rejected many of the legal arguments that

Plaintiff relies upon in this action.  Specifically, the Second Circuit concluded that continued

deduction of union dues following resignation from union membership was outside the scope of

the Supreme Court's ruling in *Janus* because such deductions were made pursuant to the terms of

a contract that the plaintiff voluntarily entered into when choosing to become a union member,

and such action did not violate the First Amendment because the defendants ceased making such

deductions when plaintiff complied with the terms of that contract required to revoke her

consent.  *Wheatley*, 80 F.4th at 391-92.  The court further emphasized that, [h]aving the choice to

voluntarily join and resign from a union is the opposite of compelled speech," and that "[t]he

First Amendment does not provide a right to 'disregard promises that would otherwise be

enforced under state law."  *Id.* (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 [1991]).

It also squarely rejected the argument that resignation from the union automatically converted

the plaintiff into a "nonmember" for the purposes of the *Janus* analysis, noting that "[u]nlike

nonmembers, as the term was used in *Janus*, who never agreed to join a union to begin with,

Appellant affirmatively entered a voluntary contractual agreement that requires her to pay dues for a full year even if she resigns her membership during the course of that year," finding that nothing about the terms specified in the membership agreement, "to which Appellant voluntarily consented, violates the First Amendment." *Wheatley*, 80 F.4th at 391-92 n.3; *see also Janus*, 138 S.Ct. at 2486 (concluding that deduction of fees from nonmembers violated the First Amendment, specifically stating that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, *unless the employee affirmatively consents to pay*.  By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. . . . Rather, to be effective, the waiver must be freely given and shown by 'clear and compelling' evidence. . . . Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.") (emphasis added).

The case here involves a union member agreement whose relevant language is identical to the agreement at issue in *Wheatley*.  Plaintiff nonetheless argues that *Wheatley* does not control because she has alleged in the Complaint that she was coerced into signing the membership agreement and therefore her membership in the union (and consequent promise to pay dues) was not voluntary, as well as that there are a number of reasons why the membership agreement is unenforceable even under state contract law.  These arguments are without merit.

As to Plaintiff's argument that she was coerced into signing the membership agreement and did so only under duress, that argument is not supported by her own factual allegations in the Complaint.  Specifically, as is relevant, Plaintiff alleges the following: (1) she was a member of the STA and NYSUT since approximately 2015 when she was first hired, although she had not

been required to sign a membership agreement or a dues deduction authorization at that time; (2) in June 2018, the former president of Defendant STA, William Scott, "informed Plaintiff that she was required to sign a membership agreement and dues deduction authorization or else she would be 'dropped from the union' and not receive union benefits"; (3) Mr. Scott informed her that this need for a signed membership agreement and dues deduction authorization was new based upon updated requirements by Defendant SCSD; (4) "[r]elying on Scott's advice and fearful of his warning that her failure to sign would cause her to be dropped by Defendant Unions and to lose her benefits, Plaintiff signed a membership agreement and dues deduction authorization on June 18, 2018; and (5) Plaintiff sent an email to STA vice president William Magnarelli on September 14, 2021, in which she stated she had signed the membership agreement and dues deduction authorization "during [her] very busy work day" and that she had had "no idea and was never told that [she] would be giving up [her] [F]irst [A]mendment [rights] by signing it." (Dkt. No. 1, at ¶¶ 21-26, 35.)

Contrary to Plaintiff's characterization, her own factual allegations reveal nothing that can even plausibly be considered coercive or suggesting that she signed the membership agreement and dues deduction authorization under duress. Mr. Scott's informing her of the basic fact that she was required to sign those documents in order to remain a member of the union and continue receiving union benefits due to a change in policy by Defendant SCSD does not amount to coercion. Nor does the fact that she later alleged that she was given this information and signed the agreement during a busy day plausibly suggest that she was coerced; the membership agreement itself is a one-page document containing three paragraphs of text and is written in fairly straightforward language, and there is no allegation that Plaintiff was not provided with

17

adequate time to read through this document before signing it.  Plaintiff herself alleges that she chose to sign the agreement because she did not want to lose her union benefits.  Her own factual allegations therefore plausibly suggest that her desire to maintain those benefits outweighed any disagreement or concerns she may have had about the contents of the membership agreement, and a union's act of conditioning the benefits of membership on compliance with union procedures regarding membership is not coercive.  Plaintiff offers no concrete argument regarding why she believes these allegations plausibly suggest coercion, but instead repeatedly cites to such allegations and offers the conclusion that her signing of the membership agreement and dues deduction authorization was not voluntary.  (Dkt. No. 53, at 15, 18-19.)  Because even Plaintiff seems unable to offer an explanation of how her own allegations support her argument, there is no basis to find that she has established her burden of showing that her allegations support a plausible claim under the First Amendment, or that the circumstances here represent a factual scenario that would prevent the Court from applying the rationale of *Wheatley* in this case.[1]

---

[1]     The Court also notes that, in the factual recitation portion of her response memorandum of law, Plaintiff asserts that, regarding coercion, STA president Mr. Scott essentially lied to her when he told her that she would be "dropped" by the union if she declined to sign the membership agreement; in support of that assertion, Plaintiff cites a sentence in the membership agreement purporting to show that signing the agreement is not a condition of her membership with the union.  (Dkt. No. 53, at 9-10.)  Yet even a cursory glance at the three-paragraph membership agreement indicates that the language Plaintiff relies upon for this assertion is *not* related to the signing of the membership agreement itself, but rather to consent to receive calls or text messages from the unions.  (Dkt. No. 1, Attach. 2, at 2 [stating that "By providing my cell phone number and signature I am expressly consenting to receive autodialed and/or prerecorded calls and/or text messages from or on behalf of AFT, NEW, NYSUT, AFL-CIO and/or the local union at the wireless number provided.  The scope of this consent relates to any purpose for which any of the above entities may call.  I understand that this consent is not a condition of my membership with NYSUT, its national affiliates, or the local organization named above"].)  This assertion appears to be either a careless or reckless misreading of the agreement.  In either case,

18

The fact that the new requirement for a signed member agreement and dues deduction authorization was implemented just prior to, and in anticipation of, the *Janus* decision does not bear at all upon whether the choice to sign the membership agreement was voluntary.  Plaintiff herself alleges that she signed the membership agreement because she did not want to lose her union benefits.  It is not clear how knowledge of the pendency of *Janus* would have changed that decision, given that any choice to be a "nonmember" in order to avoid the requirement to pay union dues would inherently mean she would no longer have the union benefits she admits she desired to keep.  Indeed, *Janus* was issued on June 27, 2018, and Plaintiff alleges that she did not attempt to revoke her union membership or the dues deduction authorization until September 10, 2021, more than three years later, during which time there is no allegation that she was either not a member of the unions or that the unions failed to provide her with the promised benefits.  Therefore, the fact that the membership agreement requirement might have been implemented in anticipation of the *Janus* ruling is immaterial to Plaintiff's claims and does not in any way suggest that her signing of the agreement was involuntary or coerced.

Plaintiff also argues that the membership agreement is not a valid and enforceable contract under state law, but these arguments fair no better than her assertions that it was not entered into voluntarily.  First, her argument that there was no consideration to create a valid contract because she was already a union member before signing the membership agreement in 2018 is without merit because, as the Union Defendants argue, the consideration was the fact that she would lose her union membership, and by consequence her union benefits, if she chose not to

---

Plaintiff's counsel are reminded that they are officers of the Court and cautioned to be more careful in the future about the accuracy of the representations they make to this Court.

enter into the membership agreement; seeing as how Plaintiff's own allegations indicate it was the desire to retain her union benefits that induced her to sign the membership agreement, there is no valid argument to be made that she did not receive valuable consideration. *See Brevard v. Credit Suisse*, 23-CV-0428, 2024 WL 36991, at *5 (S.D.N.Y. Jan. 3, 2024) (finding that, "[w]hile past employment is inadequate consideration to establish a contract, however, continued or future employment is sufficient to do so").

Second, the Union Defendants did not waive any provision in the membership agreement by accepting Plaintiff's completed written documents related to her revocation of her union membership and considering her to no longer be a union member after those were received on September 13, 2021. Specifically, the membership agreement states in relevant part that the authorization and assignment

> shall remain in effect, regardless of whether I am or remain a member of the Union, for a period of one year from the date of this authorization and shall automatically renew from year to year unless I revoke this authorization by sending a written, signed notice of revocation via US mail to the Union between the window period of August 1 and August 31 or another window period specified in a collective bargaining agreement.

(Dkt. No. 1, Attach. 2, at 2.) Defendants proceeded exactly as allowed by the membership agreement: Plaintiff submitted her revocation notice after the specified August window period, thus subjecting her to renewal of the authorization to have dues deducted for another year, whether or not she chose to remain a member of the unions during that year. The fact that the Union Defendants accepted her resignation from the unions upon submission of her paperwork does not change the terms of the membership agreement or waive any provision; the membership agreement does not state that a member is unable to withdraw from the unions at any time they

20

wish, merely that they will be obligated to continue to pay dues until they properly revoke the authorization during the August window period.  Indeed, as stated above, the membership agreement explicitly specifies that the authorization remains in effect "whether I am or remain a member of the Union"; it is only the authorization to deduct dues that must be revoked within the August window, not union membership itself.  Plaintiff's selective reading of the plain language of the agreement cannot change this fact.  Because the Union Defendants' actions were entirely in line with the terms of the agreement, they did not waive any part of that agreement as a result of their conduct.

Third, Plaintiff's argument that the terms of the membership agreement are ambiguous because it states that revocation can be made in the "window period of August 1 and August 31 or another window period specified in a collective bargaining agreement" is also unpersuasive. There is nothing ambiguous about this language.  The only possible window periods under the terms of the agreement are the specific one stated in the membership agreement, or one that is contained within a collective bargaining agreement relevant to the union and the employer. Contrary to Plaintiff's argument, discovery is not required to determine anything here, especially given that Plaintiff appended at least a portion of the relevant collective bargaining agreement to her Complaint, making it an appropriate piece of evidence for the Court to consider on this motion.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (stating that a court considering a motion pursuant to Fed. R. Civ. P. 12[b][6] may look to "facts stated on the fact of the complaint," "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken").  Further, to the extent that the language "a collective bargaining agreement" could arguably be considered ambiguous because

it does not specify a specific collective bargaining agreement, it is clear Plaintiff understands exactly what collective bargaining agreement is implicated, given that she appended it to her Complaint.   A review of the collective bargaining agreement as submitted in full by the Union Defendants with their motion shows that there is no alternative window period defined in that agreement.  The only window period is therefore one that is explicitly stated in the membership agreement.  As a result, there is nothing materially ambiguous about the terms of the membership agreement that would invalidate the agreement.

Fourth, Plaintiff's argument that the Union Defendants breached the membership agreement by continuing to deduct dues from her wages despite not providing her union benefits is also not supported by the terms of the agreement itself.  Plaintiff affirmatively revoked her union membership by submitting paperwork to the union.  It is not clear why she would expect that the Union Defendants would continue to provide her with union benefits after she told them she no longer wanted to be part of the union.  Further, the membership agreement clearly states that the authorization to deduct dues continues until properly revoked within the August window regardless of whether the person remains a union member during that whole period; the fact that Plaintiff was continuing to pay dues does not therefore, under the terms of the agreement, entitle her to continued union benefits after the Union Defendants accepted her resignation.  Plaintiff therefore cannot show on the facts alleged that the Union Defendants committed a material breach of the membership agreement by failing to continue to provide her with benefits after she voluntarily chose to leave the union.  *See Fultz v. Am. Fed. Of State, County and Municipal Employees*, 549 F. Supp. 3d 379, 389 (M.D. Pa 2021) (rejecting a materially identical argument based on similar agreement language as "nonsensical").

Because Plaintiff has not alleged facts plausibly suggesting that her signing of the membership agreement and dues deduction authorization was involuntary or that the agreement itself is unenforceable, she has not shown that there is a material difference between the circumstances in this case and those that were present in *Wheatley* and thus no basis for a different outcome here as to her First Amendment claim.

One more point merits discussion, which does not appear to be addressed in any great detail by either the District Court or the Second Circuit in *Wheatley* (although consideration of such issue is clearly implicated in the rationale applied): Plaintiff's argument that Defendants were required to obtain a "valid constitutional rights waiver" from her and that the membership agreement does not constitute such a waiver. (Dkt. No. 53, at 15-18.) Plaintiff relies on allegations that she was not aware that signing the membership agreement in 2018 would constitute a waiver of her First Amendment rights, arguing that, because she was not aware she was waiving these rights, the membership agreement does not constitute clear and compelling evidence of an intent to waive these rights. (*Id.*) However, Plaintiff's argument that some additional waiver was required beyond the act of signing the membership agreement is undermined by *Janus* itself, which, as was noted above, indicated that payments to a union can be deducted even from a nonmember of a union where "the employee affirmatively consents to pay," and that "[b]y agreeing to pay, nonmembers are waiving their First Amendment rights." *Janus*, 138 S.Ct. at 2486. *Janus* acknowledges that, although waiver cannot be presumed in the absence of any agreement, a nonmember signing an agreement to pay constitutes an expression of clear and affirmative consent that acts as a waiver. *Id.* Thus, to the extent *Janus* is even applicable to this case given that Plaintiff was already a member of the union at the time she

23

signed the membership agreement in June 2018 (and therefore was never a "nonmember" of the union at any point in her relevant employment until she resigned in September 2021, after which she was still subject to the membership agreement), her signing of the agreement (which again explicitly stated she was consenting to continue to have dues deducted for the full applicable year until she provided a valid written revocation of that consent during the August window, regardless of whether she remained a union member for that whole time) constitutes a valid waiver of any relevant First Amendment rights for the limited purposes encompassed by the membership agreement.[2]  The Second Circuit stated similarly in *Wheatley*, indicating that "Appellant affirmatively entered into a voluntary contractual agreement that requires her to pay dues for a full year even if she resigns her membership during the course of that year," and that "[n]othing about that arrangement, which is clearly spelled out in the Membership Agreement to which Appellant voluntarily consented, violates the First Amendment."  *Wheatley*, 80 F.4th at 391-92 n.3.[3]

Because Plaintiff signed the relevant membership agreement and she has not alleged facts plausibly suggesting that her signing of that document was involuntary or coerced, her First Amendment claim must be dismissed as a matter of law on the same legal grounds discussed by the Second Circuit in *Wheatley*.

---

[2]     Indeed, even if *Janus* is not directly applicable due to the factual differences, there is no logical reason why an affirmative agreement to pay union fees by a nonmember would constitute a waiver of First Amendment rights, where the same agreement by a *member* would *not* constitute such a waiver (in the event they resign their union membership before the period of the agreement has finished).

[3]     The Second Circuit notably found that *Janus* did not apply at all to the case because the appellant was not a "nonmember" as that term was defined in *Janus*.  *Wheatley*, 80 F.4th at 391.

### 2.        Plaintiff's Fourteenth Amendment Claim

Plaintiff's arguments regarding her Fourteenth Amendment due process claim must also be rejected for the reasons outlined in *Wheatley*.  Specifically, the Second Circuit has already rejected Plaintiff's argument that the Supreme Court's decision in *Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292 (1986), provides procedures that the Union Defendants in this case were required to offer her; in so doing, the Second Circuit has reasoned that the *Hudson* procedures are both irrelevant post-*Janus* because charging any fees against nonmembers is no longer constitutional and, in any event, *Hudson* does not apply to individuals who are union members or who are subject to a membership agreement to pay union dues. *Wheatley*, 80 F.4th at 392.  Indeed, *Janus* effectively eliminated the distinction noted in *Hudson* between chargeable and nonchargeable fees by finding that nonmembers could not be required to pay either type of fees unless they gave sufficient consent, and therefore made obsolete the procedures implemented by *Hudson* for determining how certain types of nonmember fees could be used by the receiving union.  Even assuming for the sake of pure argument that Plaintiff became a "nonmember" as that term is used in *Hudson* and *Janus* (which she is not because, although she resigned from the union, she was still subject to the membership agreement she signed), there would therefore still be no basis to require the application of the *Hudson* procedures post-*Janus*.  Plaintiff's attempt to rely on *Hudson* as a basis for her Fourteenth Amendment claim is therefore nonsensical.

25

The other bases Plaintiff raises for her due process claim are all intertwined with the arguments regarding her First Amendment claim that have already been rejected.[4]  (Dkt. No. 53, at 25-26.)  As in *Wheatley*, because Plaintiff's arguments regarding a violation of her First Amendment rights fail, so too must her Fourteenth Amendment claim premised on that supposed protected interest.  *See Wheatley,* 80 F.4th at 392-93 ("Because Appellant was contractually obligated to pay union dues pursuant to the Membership Agreement that she voluntarily signed, and the District's withholding of union dues did not constitute a violation of her First Amendment rights, Appellant's Fourteenth Amendment claim fails.").

### C.    The Union Defendants' Remaining Arguments

Having found that Plaintiff's substantive claims must be dismissed as a matter of law, the Court will address the other arguments raised only briefly, primarily to say that it agrees with Judge Scullin's well-reasoned and detailed resolution of those same issues in the District Court's *Wheatly* decision.  *Wheatley*, 629 F. Supp. 3d at 26-34.[5]  Specifically, Judge Scullin concluded that the factual allegations were insufficient to plausibly suggest that the union defendants in that case were acting under the color of state law because the membership agreement was essentially

---

[4]    She does argue in a cursory fashion that the Union Defendants failed to provide her with any process "to object to the dues being deducted from her pay, the amount they deducted, or the ways (including subsidizing their political speech) that they spent her money."  (Dkt. No. 53, at 25-26.)  Yet this argument again ignores the fact that the deduction of dues was premised on her voluntary signing of the membership agreement and choice to join the union, and she has not provided any authority regarding the existence of any right of a union member to dictate how their dues can be spent by the union.

[5]    The Second Circuit did not review these additional findings, but instead assumed, for the sake of argument, that a state action was taken by the union and school district defendants in order to address the merits of the plaintiff's claims.  *Wheatley,* 80 F.4th at 390.

a private contract between the plaintiff and the defendant unions and the plaintiff did not allege

that the school district "received any benefit from performing its ministerial task of" collecting

and forwarding plaintiff's dues, such that the source of the alleged constitutional harm was not a

policy of the school district but rather a private agreement without any joint action between the

union defendants and the school district.  *Id.* at 26-30.  Judge Scullin further found that there was

no plausibly alleged basis for the imposition of *Monell* liability against the defendant school

district because "it was not a policy of Defendant District, but rather state law [the Taylor Law],

that required Defendant District to deduct union membership dues from Plaintiff's wages until

Plaintiff revoked that authorization 'in accordance with the terms of the signed authorization.'"

*Id.* at 30-34.  Because the terms of the membership agreement and the relevant facts of *Wheatley*

are all materially similar to those asserted in the Complaint in the current case, a different

outcome is not warranted here regarding any of those arguments.[6]  The Court therefore finds

that, alternatively, Plaintiff has not plausibly alleged that the Union Defendants acted under the

---

[6]     Any potential additional First Amendment claims Plaintiff might seek to plead would be
subject to dismissal for many of the same reasons already discussed as to her existing First
Amendment claim.  (*See* Dkt. No. 53, at 31 [stating that Plaintiff expects to seek leave to amend
her Complaint to add claims for violations of her right of freedom of speech and association
related to the Union Defendants' actions in requiring her to complete two forms in order to
resign from the union].)  Because such claims would necessarily be dismissed as a matter of law,
particularly based on the inability to plausibly allege that the Union Defendants are state actors,
allowing Plaintiff the opportunity to make such an amendment would be futile.  *See Kane v.
Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 107 (2d Cir. 2023) (noting that "[p]roposed
amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule
12[b][6] of the Federal Rules of Civil Procedure").

color of state law or that Defendant SCSD can be held liable for complying with the

nondiscretionary requirements of the Taylor law.[7]

       **ACCORDINGLY**, it is

       **ORDERED** that the Union Defendants' motion to dismiss (Dkt. No. 47) is **GRANTED**;

and it is further

       **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**, her claims

requesting injunctive or declaratory relief are dismissed without prejudice, and her remaining

claims are dismissed with prejudice.

Dated: February 27, 2024
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[7]     Plaintiff's various allegations in the Complaint to the effect that "Defendants, act[ed] in concert under color of state law" are legal conclusions that need not be accepted as true. (*See e.g.*, Dkt. No. 1, at ¶¶ 43-47, 56, 63.) *See Cunningham v. New York State Dept. of Labor*, 05-CV-1127, 2006 WL 2639372, at \*1 n.1 (N.D.N.Y. Sept. 12, 2006) (Hurd, J.) (noting that "only plaintiff's factual allegations, as opposed to conclusory allegations or legal conclusions, are taken as true" on a motion pursuant to Fed. R. Civ. P. 12[b][6]).